# Truitt Brothers & Company *versus* Ludwig, Kneedler & Company.

. A judgment confessed on an amicable action entered before a justice of the peace for a sum exceeding $100, is good without the *personal* appearance of the plaintiff. It is sufficient if he appear by agent.

An execution is intended, not to secure, but to enforce payment of a debt.

Where an execution-creditor after making a levy on a stock of goods, takes a bond with security for the amount of the debt, conditioned for its payment in several instalments at future periods, and that the goods levied shall not be removed without consent of the sheriff, and then stays proceedings upon his execution, leaving the debtor in possession of the goods, and permitting him to buy, sell, and do business with them as before, the lien of the levy is postponed in favour of a subsequent execution-creditor, who seizes the goods before actual possession taken under the first execution.

An *alias fi. fa.* placed in the sheriff's hands by the first execution-creditor, before the first instalment on his bond becomes due, and after the goods had been seized on a subsequent execution, will not revive the lien of the first execution, or create a new one having priority over the subsequent execution-creditor.

By accepting a bond with security payable in instalments for the debt, and staying execution, the execution-creditor parts with the right of seizing the goods before the maturity of the debt under the new contract.

If an execution-creditor, after levy, leaves the goods in the hands of the debtor, who disposes of them, this is a satisfaction of his execution to the value of the goods disposed of.

ERROR to the Common Pleas of *Cambria county*.

On the 18th April, 1853, Truitt & Brothers and the defendant, Muikerheide, voluntarily appeared before a justice of the peace in said county, the plaintiffs by their attorney, A. Kopelin, Esq., and the defendant in person; and judgment was entered by the justice on the confession of the defendant on one claim for $270.90, and on another claim for $202.

On the 3d May, transcripts of both judgments were entered in the Common Pleas, Nos. 179 and 180, June Term, 1853. On the 2d May, execution was issued and put into the hands of a constable, who returned them endorsed "Levy made as per schedule annexed, May 3, 1853. May 21, 1853, goods sold by sheriff Durbin."

On the 19th January, Ludwig, Kneedler & Co. obtained judgment in the Common Pleas against Muikerheide for $1499.52, with interest from 20th January, 1853. Upon this judgment a *fi. fa.* issued to No. 27, March Term, 1853; and on the 25th January, four days after the receipt of the first, the sheriff re-

ceived a second *fi. fa.* against the same defendant, in favour of Kneedler & Feather; and, on the 26th January, 1853, the sheriff went to defendant's store in Johnstown, and by virtue of the said writs "levied on his entire stock of goods," Hutchinson, the attorney in both cases, making an inventory thereof. After this the said defendant and George W. Easly, on the same day, 26th January, 1853, executed a bond to the sheriff in the sum of $1525.69 (interest to be added from January 20, 1853), the condition of which was (after reciting the said writs and payment of $100 on account thereof), that "should the said J. Muikerheide pay one-half of the said sum of $1525.69, on or before the 26th April next, and the balance on or before the 26th June, 1853, with costs, and not remove the said goods without the consent of said Durbin; then this bond to be void, &c. The $100 was paid on the same day on the writs, and on the 7th March, 1853, both writs were stayed by Hutchinson the attorney.

On one of the judgments, No. 156, December Term, 1853, an *alias fi. fa.* was issued to June Term, and placed in the hands of the sheriff, 15th March, 1853, and remained unexecuted till May 4, when discovering the levy of the constable on the day before (the 3d May), Easly, the co-obligor in the bond, procured the sheriff's deputy, but with due notice of the prior levy of the constable, to seize and sell the goods of defendant; and on the 11th of the same month the sheriff returned the writ "money made to the amount of $1110.57."

During the interval between the issuing of the first writ on the 19th January, until the 4th May, 1853, when the deputy sheriff levied under the *alias*, a period of nearly five months, the defendant was permitted to retain the possession of the goods, buying, selling, and doing business as he had done theretofore.

An auditor was appointed to distribute the money arising from the sale—who, on the 7th September, 1853, reported "that the proceeds of the sheriff's sale ought to be applied to the payment of the judgment of Ludwig, Kneedler & Co. *v.* G. H. Muikerheide, which was confirmed by the Court, December 5, 1853.

*Kopelin*, for Truitt & Co.—The effect of the bond was to discharge the judgment which it secures, and plaintiffs can have recourse to the sheriff and his sureties: 12 *Ser. & R.* 41; 5 *Barr* 517; *Tr. & Haley's Prac.* vol. 1, 778.

The party having the fund in his own hands cannot relinquish it to the injury of a third person. Ludwig & Kneedler may yet sue and recover on the bond.

As respects third persons, a release of a levy on personal property by plaintiff is an extinguishment of the debt. The levy in this case was released by the stay of execution: Duncan *v.* Harris, 17 *Ser. & R.* 466.

Seizing goods in execution to the value of the debt, operates

[Truitt Brothers & Co. v. Ludwig, Kneedler & Co.]

a discharge of the judgment, and this whether sold or not: Hunt v. Breading, 12 *Ser. & R.* 37. The object of the bond was *security*, and not the *bonâ fide* one of levy and sale. Ludwig & Kneedler are, therefore, postponed: Commonwealth v. Strembach, 3 *Rawle* 341; Weir v. Hale, 3 *W. & Ser.* 285; Smith's Appeal, 2 *Barr* 231; 8 *Harris* 46.

If the levy under the first *fi. fa.* was discharged, the *alias* could not avail them; but this issued on the 7th March, 1853, before the first instalment on the bond (26th April) became due, and was therefore void. The object in keeping it passive in the hands of the sheriff, was to keep off other creditors; this the law will not tolerate: Earl's Appeal, 1 *Harris* 46. The object was *lien*, and not sale.

*R. L. Johnston*, for defendant.—The judgment of Truitt, Brother & Co. was entirely void: Act of Assembly 20th March, 1810; 10 *Watts* 118. The parties *in propria persona* must appear before the justice; an appearance by attorney or agent is insufficient to give jurisdiction: 10 *Watts* 118, Camp v. Wood.

The plaintiffs *did not release their levy; nor was there any third person affected*, as the appellees had not obtained their judgment till nearly three months after. The cases cited by the appellants do not aid them; and the issuing of the *alias*, before appellees' judgment was obtained, secured a lien on defendant's goods that could not be shaken. The staying of the original *fi. fa.* injured no one, for no one had acquired rights; and if appellants had gone on to sell on their very suspicious judgment, the *alias* would have taken the money.

The bond did appellants no injury; the sheriff would have sold on the *fi. fa.*, instead of taking the bond, before their rights had accrued.

The opinion of the Court was delivered by

Lewis, C. J.—This is an appeal by Truitt, Brother & Co. from the decree of the Common Pleas awarding the proceeds of sale of personal estate of G. H. Muikerheide to Ludwig, Kneedler & Co. It is objected against the judgments of the appellants that they were confessed before a justice of the peace for sums over $100, without the *personal appearance* of the plaintiffs. The defendant, Muikerheide, appeared voluntarily in person, and plaintiffs appeared by agent. An amicable action was entered by consent. The plaintiffs' demand was on a promissory note, the date and amount of which was stated, and the defendant confessed judgment. In general every person may act in person or by agent, and the Act of Assembly, in regulating proceedings before justices of the peace, recognises this right. It speaks of the parties appearing "either in person or by agent," and in no part of it prohibits an appearance by agent. Indeed such a prohibition might lead to

gross injustice.· A defendant may be prevented from attending in person either by unavoidable absence on a distant joutney, or by sickness, or other urgent necessity. A plaintiff may be in the same predicament. And in the case of the latter, he so frequently resides at a distance from his debtor, that he is under the necessity of sending his claim to an agent or attorney for collection. To deny him the benefit of his judgment for a just debt, voluntarily confessed by his debtor, would produce extensive mischief, without any compensating advantages. The objection that judgments might be confessed in order to defraud creditors, has nothing substantial in it that does not apply to judgments confessed in the Common Pleas. The 14th section of the Act of 1810, which authorizes judgments by confession before justices of the peace for sums over $100, makes ample provision for investigating them if tainted with fraud. If it shall be made to appear that there is just cause to believe that a judgment was confessed with a view to defraud creditors, it is made the duty of the. justice to send a transcript of his proceedings to the Common Pleas for investigation there ; so that this method of collecting debts affords no greater facilities for defrauding creditors than any other, while it is attended with the great advantage of being more readily accessible and less expensive to the parties. That it enables a debtor to prefer one creditor over another, in cases where he· might be deprived of this right if compelled to travel to a distant seat of justice, is no objection to it. Where an acknowledged right exists, the facilities for exercising it would not be denied. That a person by writing without the service of process and without appearance, cannot confess judgment before a justice of the peace, is manifest from the provisions contained in the 13th section of the Act. That section expressly provides for the issuing of "a summons or *capias*," and for hearing the cause "as in other cases." As the jurisdiction is a limited one, it necessarily followed that a judgment obtained in any other way than in the mode prescribed could not be sustained. Alberti *v.* Dawson, 1 *Binn.* 105, and Camp *v.* Wood, 10 *Watts* 113, were determined on this principle. They relate to judgments confessed by warrants of attorney without appearance, and have no relation to *judgments confessed by a defendant in person.* The observations of the judge, in the case last mentioned, so far as they go beyond the question before him, cannot be received as authority. Nor can we regard in that light the decision of the Philadelphia Common Pleas in the case of Boon *v.* Collins, 10 *Leg. Int.* 106. It would be dangerous in practice, as well as contrary to the manifest intentions of the Act, to permit justices of the peace to enter judgments against a party, unless duly served with process, or voluntarily appearing before him. But we see no such evil in permitting the plaintiff to appear either "in person or by agent," to receive such a judgment. The judgments of the appellants are, therefore, valid. This brings us

[Truitt Brothers & Co. *v.* Ludwig, Kneedler & Co.]

to the question, whether they have gained a priority over those of the appellees.

Nothing can be better settled than that an execution is intended, *not to secure,* but *to enforce payment* of a debt. It must be used in good faith, for its legitimate purpose, or the plaintiff, in whose favour it issues, gains no advantage from it. Where an execution creditor, after making a levy on a stock of goods in a store, takes a bond, with security, for the amount of the debt, conditioned for its payment in several instalments, at future periods of time, and that the goods levied on shall not be removed without the consent of the sheriff, and afterwards stays proceedings on his execution, leaving the debtor in possession of the goods, and permitting him, for several months, to buy, sell, and do business with them as before, the lien of the levy is postponed in favour of a subsequent execution-creditor who seizes the goods before actual possession taken by the first execution. An *alias fi. fa.* placed in the sheriff's hands by the first execution creditor, before the first instalment of his debt becomes due and payable according to the terms of the bond, without any proceedings under it until nearly two months after it issued, and then only after the goods had been seized by another officer on a subsequent execution, is not sufficient either to revive the lien under the first execution, or to create a new one, so as to gain a priority over the subsequent execution creditor. By accepting the bond with security for the payment of the debt in instalments, and agreeing to the stay of execution thereon, the plaintiffs, in the first execution, deprived themselves of the right to seize and sell the goods before the maturity of the debt under the new contract. Under such circumstances, the issuing of an *alias fi. fa.* cannot be regarded as an intention to violate the agreement by selling the goods before the first instalment was payable. It is plain from the contract, and from the manner in which the *alias fi. fa.* was used, that it, like the first writs, was merely intended for security.

If Ludwig, Kneedler & Co., who have thus lost their priority, should be allowed to regain it, there would be a difficulty in ascertaining the amount. After levy, they permitted their debtors to carry on business and dispose of the goods levied on as before. As between the execution-creditors, this is undoubtedly a satisfaction of the executions of Ludwig, Kneedler & Co., to the value of the goods thus disposed of. This value has not been ascertained. Nor is it necessary in the view we take of the case.

> It is ordered and decreed that the decree of distribution be reversed. It is further ordered and decreed that the money in Court be applied to the satisfaction in full of the two executions in favour of Truitt, Brother & Co., and that the residue, after payment of costs, be applied to the payment, *pro tanto,* of the executions in favour of Ludwig, Kneedler & Co.